## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHRISTOPHER GIBBS,             :
                                    :

          Plaintiff,           :    No.
                                      :

        v.                   :
                                      :

CITY OF PITTSBURGH,         :    **JURY TRIAL DEMANDED**
                                      :

          Defendant.      :

## COMPLAINT

Plaintiff Christopher Gibbs ("Mr. Gibbs"), by his counsel, files this Complaint against the City of Pittsburgh ("Pittsburgh") as follows:

## INTRODUCTION

1.     Mr. Gibbs is a qualified individual with a disability—namely ADHD (defined *infra*)—who served in the United States Marine Corps for eight years where he received numerous medals and ribbons before being honorably discharged and becoming a commissioned law enforcement officer in Ohio where he received exemplary reviews and was never disciplined or reprimanded. Mr. Gibbs subsequently applied for a police officer position in the Pittsburgh Bureau of Police ("PBP") and, after taking the written examinations for the PBP, ranked 14 out of over 550 candidates for a police officer position with the PBP. Despite the foregoing, and despite being found psychologically capable of exercising appropriate judgment and restraint as a certified police officer in Pennsylvania by a different law enforcement agency under the same standardized psychological criteria used by the PBP, Pittsburgh found Mr. Gibbs to be psychologically unfit because of his ADHD. Mr. Gibbs' ADHD was a motivating and/or determinative factor in not being hired by Pittsburgh, in violation of the Americans with Disabilities Act and the Rehabilitation Act.

## JURISDICTION AND VENUE

2.      This action is brought pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, as amended (the "ADA"), and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.* (the "RA").  This Court has jurisdiction over these claims under 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3) and (4).

3.       Venue is proper pursuant to 28 U.S.C. §1391(b) because each claim arose in the Western District of Pennsylvania.

## PARTIES

4.      Mr. Gibbs is an adult individual residing in the Western District of Pennsylvania.

5.      Pittsburgh is a city of the second class located in the Commonwealth of Pennsylvania.  The City operates and maintains the Pittsburgh Bureau of Police ("PBP"), which has a principal place of business at 1203 Western Avenue, Pittsburgh, Pennsylvania 15233.  At all relevant times, Pittsburgh was acting by and through its duly authorized administrators, agents and/or employees, who at all relevant times were acting within the course and scope of their employment, under the color of state law, and/or in accordance with Pittsburgh's policies, customs and practices.

## FACTS

6.      At all relevant times, Mr. Gibbs had a documented diagnosis of Attention Deficit Hyperactivity Disorder ("ADHD"), which is a neurobehavioral disorder marked by an ongoing pattern of inattention, hyperactivity and/or impulsivity that interferes with functioning.

7.      Common characteristics of ADHD include impulsivity and inattention, marked by a failure to listen to instructions, inability to organize oneself and work tasks, inability to stay on task, difficulty paying attention, difficulty responding to details and rapid pressured speech.

8.      Mr. Gibbs is prescribed medication for his ADHD.

9.      Mr. Gibbs' ADHD is a disability because it is a mental impairment that substantially limits one or more major life activities for him.

10.     Mr. Gibbs is a military veteran, having served in the United States Marine Corps from March 2006 through July 2014.

11.     As a Marine, Mr. Gibbs served two active deployments between 2008 and 2010, where he engaged in Operation Enduring Freedom and Operation Iraqi Freedom.

12.     In July 2014, Mr. Gibbs was honorably released from duty from the United States Marine Corps Reserves as a Corporal in MP CO C 4th MLG Dayton, Ohio—the 4th Law Enforcement Battalion.

13.     At the time of his honorable discharge, Mr. Gibbs had received two good conduct ribbons for no disciplinary record during his military service.

14.     Mr. Gibbs had received the following military medals and ribbons at the time of his honorable discharge: (i) Sea Service Deployment (2x); (ii) Armed Forces Reserve Medal (2x); (iii) Iraqi Campaign Medal; (iv) Global War on Terrorism Service Medal; (v) National Defense Medal; (vi) Selected Marine Corps Reserve Medal; and (vii) Navy Unity Commendation (2x).

15.     In September 2013, while Mr. Gibbs was engaged in the United States Marine Corps Reserves, he obtained his police commission and became employed in the reserve component of the Reynoldsburg Police Department in Reynoldsburg, Ohio.

16.     In February 2014, Mr. Gibbs became employed with the Village of West Liberty Police Department in West Liberty, Ohio as a part-time police officer.

17.     Both the Reynoldsburg Police Department and the Village of West Liberty Police Department found Mr. Gibbs to be psychologically capable of performing the job of police officer, even though he was diagnosed with ADHD.

18.     In October 2015, Mr. Gibbs became employed with a private police force that provided security services to Ohio Health, a non-profit healthcare system in Columbus, Ohio, which also found him psychologically capable of performing the job of police officer.

19.     While Mr. Gibbs was employed as a police officer in Ohio, he received only exemplary performance reviews and was never disciplined or reprimanded.

20.     In or about late 2016 or early 2017, Mr. Gibbs' wife was transferred to Pittsburgh, Pennsylvania; therefore, in February 2017, Mr. Gibbs applied for Pittsburgh's police officer recruit academy class of August 2017.

21.     Following his initial written examinations, and based on his experience, Mr. Gibbs ranked 14 out of over 550 candidates to become police officers for the PBP.

22.     On June 30, 2017, Pittsburgh offered Mr. Gibbs a conditional offer of employment.

23.     This conditional offer became a final offer of employment upon Mr. Gibbs' successful completion of a psychological evaluation, pre-employment medical examination, and residency requirement.

24.     Mr. Gibbs successfully completed the pre-employment medical examination and residency requirement.

25.     Pittsburgh's policy concerning the psychological evaluation states:

II.     Conditional Offer of Employment

1.     A conditional offer of employment is contingent upon candidates successfully completing the psychological assessment and the medical examination.  When both are successfully completed candidates will receive a final offer of employment.

*** 

3.      Following the administration of the written psychological assessment, candidates will be scheduled for an interview with a Civil Service psychologist.

III.    Psychological Interview

1.      The interview with the psychologist is a personal one on one interview.  The psychologist will be supplied with the scored results of the written psychological test instrument and the comprehensive background investigation folder.   There are two possible outcomes from the psychological evaluation: recommended or not recommended for employment as a City of Pittsburgh Police Officer.  This is not a reflection of any candidate's suitability for any other position.

2.      If the psychologist determines candidates are not recommended, they will have the opportunity to be scheduled for a second interview during this processing period.  Since there is a tight time period for the processing period, the City will contact candidates via phone if they are not recommended in order to schedule the second interview.  The City will obtain all relevant phone numbers to contact candidates at the written psychological assessment.

3.      Second interviews will be conducted by a different psychologist from the first interview.  The psychologist will be given all of the materials/notes from the first interview.  If candidates are not recommended by the second psychologist, the decision is administratively final.

4.      If candidates are recommended by the second psychologist, resulting in a split determination between the first and second psychologists, the case must go before the psychological panel for a final determination. The panel process will also occur during the current processing period.  The panel will consist of the two psychologists involved in the case and a third psychologist that will be appointed by the Chief Civil Service psychologist. All case materials are made available to the panel.  Final determination of the panel must be unanimous and is administratively final.

26.     The psychological evaluation is based on a standardized psychological assessment known as the Minnesota Multiphasic Personality Inventory, or MMPI-2.

27.     Although Mr. Gibbs passed all other conditional offer requirements—including the written psychological evaluation—he did not pass the psychological interview.

28.     With respect to the psychological interviews, Mr. Gibbs was not recommended by the first psychologist, recommended by the second psychologist, and not recommended by the third psychologist.

29.     Mr. Gibbs' conditional offer was revoked in July 2017.

30.     At the time of his psychological evaluation, Pittsburgh knew that Mr. Gibbs had a disability, a record of a disability and/or regarded him as having a disability—namely, ADHD.

31.     At the time of his psychological evaluation, Pittsburgh knew that its psychologists asked Mr. Gibbs questioning specifically relating to his ADHD.

32.     When Mr. Gibbs' conditional offer was revoked, he was not provided any information concerning its revocation except that he was told he failed the psychological component of the offer and therefore a final determination was made that he would not be hired.

33.     No reasons were provided to Mr. Gibbs as to why he was deemed psychologically unfit for a police officer position with the PBP.

34.     Mr. Gibbs has no history of problematic behaviors while on or off-duty during his military service or any other service while employed in any police organization.

35.     Mr. Gibbs subsequently learned that Pittsburgh deemed him to be psychologically unfit because of his ADHD, including findings relating to his ADHD such as impulsivity, inattention, inability to organize himself and boredom with repetition, among others.

36.     All these psychological findings related to the characteristics of Mr. Gibbs' ADHD.

37.     At the time Pittsburgh deemed Mr. Gibbs to be psychologically unfit, it knew that his ADHD had never previously rendered him unqualified for any position in the military or law enforcement and, to the contrary, that Mr. Gibbs excelled in both those fields.

38.     Pittsburgh took no steps to determine whether Mr. Gibbs' ADHD prohibited him from performing the duties, responsibilities and/or functions of a police officer in the PBP, nor did it interactively engage in any process to determine whether it could (or needed to) reasonably accommodate his disability.

39.     Pittsburgh uses the psychological evaluation to intentionally deny employment to candidates—like Mr. Gibbs—with disabilities and/or for whom it regards as disabled.

40.     In or around September 2018, Mr. Gibbs applied for a police officer position with the Hamar Township Police Department in Hamar Township, Pennsylvania.

41.     Pursuant to that application for employment, Mr. Gibbs was required to complete a written psychological evaluation and to undergo a psychological interview for employment.

42.     Like Pittsburgh, this psychological evaluation was based on the Minnesota Multiphasic Personality Inventory, or MMPI-2, standardized psychological assessment.

43.     On or about September 20, 2018, the Hamar Township Police Department found Mr. Gibbs psychologically capable of exercising appropriate judgment and restraint as a certified police officer in Pennsylvania.

44.     The Hamar Township Police Department provided Mr. Gibbs with a copy of his psychological evaluation and the reasons upon which it found him psychologically capable.

45.     The Hamar Township Police Department was aware that Mr. Gibbs had a documented diagnosis of ADHD and that Pittsburgh previously found him psychologically unfit.

46.     Mr. Gibbs is a qualified individual who is psychologically capable of exercising appropriate judgment and restraint as a certified police officer in Pennsylvania.

47.     Nevertheless, Mr. Gibbs' ADHD was the motivating and/or determinative factor that Pittsburgh used not to hire him and to revoke his conditional offer from the PBP.

## COUNT I

### Discrimination Under the ADA

48.     The foregoing paragraphs are incorporated herein.

49.     Mr. Gibbs is a disabled person within the meaning of the ADA because he has a mental impairment that substantially limits one or more major life activities, has a record of a disability and/or was regarded as having a disability and—although he was otherwise qualified to perform the essential functions of his job as a police officer for the PBP, with or without reasonable accommodations—he suffered an adverse employment decision by not being hired because of Pittsburgh's discrimination against him by reason of his disability.

## COUNT II

### Discrimination Under the RA

50.     The foregoing paragraphs are incorporated herein.

51.     Pittsburgh receives federal financial assistance.

52.     For all the reasons stated in Count I, Mr. Gibbs—a qualified individual with a documented disability—suffered an adverse employment decision by not being hired because of Pittsburgh's discrimination against him because of his disability.

### PRAYER FOR RELIEF

WHEREFORE, Mr. Gibbs respectfully requests that this Court grant the following relief:

a.      That Pittsburgh be required to compensate Mr. Gibbs for back pay, front pay and other damages in the form of lost wages, and lost or reduced benefits, with interest until the date of any verdict as to be determined at trial;

b.      That Pittsburgh compensate Mr. Gibbs for all other applicable compensatory damages in an amount to be determined at trial;

c.      Punitive damages in an amount to be determined at trial;

d.      Attorney's fees and costs; and

e.      All other relief this Court deems just and proper.


                            Respectfully submitted,

                            THE LAW OFFICES OF TIMOTHY P. O'BRIEN

                            /s/ Alec B. Wright
                            Alec B. Wright
                            Pa. ID No. 316657

                            239 Fourth Avenue
                            Investment Building, Suite 2013
                            Pittsburgh, PA  15222
                            (412) 232-4400

                            *Counsel for Plaintiff, Christopher Gibbs*